FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 20, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| VINCENT O.,<br><br>       Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>       Defendant. | NO: 1:17-CV-03119-FVS<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 12 and 13. This matter was submitted for consideration without oral argument. The plaintiff is represented by Attorney D. James Tree. The defendant is represented by Special Assistant United States Attorney Joseph J. Langkamer. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 13, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 12.

ORDER ~ 1

## JURISDICTION

Plaintiff Vincent O. protectively filed for supplemental security income and disability insurance benefits on August 15, 2013. Tr. 250-59. Plaintiff alleged an onset date of May 1, 2013. Tr. 250, 254. Benefits were denied initially (Tr. 146-53) and upon reconsideration (Tr. 155-64). Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Wayne Araki on August 17, 2015. Tr. 36-84. Plaintiff was represented by counsel and testified at the hearing. *Id.* The ALJ denied benefits (Tr. 14-35) and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and will therefore only the most pertinent facts are summarized here.

Plaintiff was 36 years old at the time of his alleged onset date of disability. Tr. 27. He finished his last two years of high school in home school, and received his high school diploma. Tr. 40. He is married and has two children from previous relationship(s) that he has "basically no contact with." Tr. 56-57, 67. Plaintiff has work history as an assembler, child monitor, material handler, maintenance repairer, molding machine operator, laundry worker, department manager, sales

attendant, and packager. Tr. 46-52, 70-71. He testified that he left jobs for various

reasons, including: moving, not being able to handle the work, verbal abuse from a

co-worker, and mistreatment by a manager. Tr. 49-52.

Plaintiff testified that he has depression where he needs to "try and sleep it

away;" and can get irritated and have anxiety over "the smallest things real fast."

Tr. 59. He also testified that he takes medication for his mental health symptoms,

which is helping a little bit and "making a difference." Tr. 46. He reported that,

on average, he would miss work three days of work, out of a two-week period, due

to psychological issues. Tr. 60-61. He reported loss of focus, depression, violent

thoughts, and panic attacks. Tr. 60-64. Plaintiff testified he stays in his house;

doesn't do well with "new people;" avoids large groups of people; and small

groups of people are "not as bad" but still uncomfortable. Tr. 68-69. Plaintiff

alleges disability due to mental health impairments. *See* Tr. 155.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that she is not only unable to do his previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).

If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 1, 2013, the alleged onset date. Tr. 19. At step two, the ALJ found Plaintiff has the following severe impairments: anxiety with panic and depression. Tr. 19. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 20. The ALJ then found that Plaintiff has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is able to remember, understand, and carry out instructions and tasks generally required by occupations with an SVP of 1 or 2. He can have infrequent, superficial interaction with the general public. He can have occasional interaction with coworkers or supervisors. His job tasks should not require the assistance of others for completion but occasional assistance would not be precluded. He should not work in a team setting.

Tr. 22. At step four, the ALJ found that Plaintiff is capable of performing past relevant work as an assembler of small products, laundry worker II, packager machine, and marker II. Tr. 27. In the alternative, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: landscape laborer and kitchen helper. Tr. 27-28. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from May 1, 2013, through the date of the decision. Tr. 29.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ improperly discredited Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the medical opinion evidence; and

3. Whether the ALJ properly weighed the lay witness testimony.

**DISCUSSION**

**A. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible" for

several reasons.  Tr. 23.  First, the ALJ found the "treatment notes fail to support the degree of impairment that [Plaintiff] is alleging;" and more specifically, "[m]ental status evaluations throughout the record are largely unremarkable, and do not document the degree of limitation [Plaintiff] is alleging."  Tr. 25.  An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).  Plaintiff generally argues "the ALJ's conclusion that the record did not support the severity of [Plaintiff's] alleged symptoms is not borne out by the record."  ECF No. 12 at 12.  However, the ALJ set out, in detail, the medical evidence contradicting Plaintiff's claims of disabling limitations, including "largely unremarkable" mental status examinations.  Tr. 23-25.  For example, mental status examination results in May 2013 indicated Plaintiff had good eye contact, was polite and cooperative, had normal speech; and his "thought process, thought content, orientation, perception, fund of knowledge, abstract reasoning, insight, and judgment were all within normal limits."  Tr. 24 (citing Tr. 478-79).  A June 2013 mental status examinations observed Plaintiff as alert, cooperative, and

not anxious or in acute distress; and in November 2013, Plaintiff was noted to be alert, oriented, with coherent speech; and average range IQ including calculating serial 7s without difficulty, spelling in reverse, and providing abstract proverb interpretations. Tr. 24 (citing Tr. 506, 590). In November 2013, the examiner also specifically found "no indication of Bipolar, ADD/ADHD or even current [symptoms] of severe depression. I think he may have some investment in being [diagnosed with] a serious [mental health] disorder." Tr. 24, 590. In July 2014, as noted by the ALJ, Plaintiff "endorsed long-standing anxiety and depression, but did not report any significant mental health treatment other than the psychiatric medication management appointments with his primary care provider." Tr. 24, 631-35; *see Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor). In August 2014, Plaintiff's score on the PHQ indicated only mild depression, and his score on the GAD indicated only mild anxiety. Tr. 24, 637. Finally, in October 2014, a mental status examination revealed Plaintiff was oriented; had intact memory with immediate, recent and remote recall; and was able to respond to questions appropriately. Tr. 24, 618.

Based on the foregoing, and regardless of evidence that could be interpreted more favorably to the Plaintiff, the ALJ properly relied on evidence supporting his

finding that the degree of impairment alleged by Plaintiff is not supported by the

weight of the medical evidence. Tr. 25; *See Thomas*, 278 F.3d at 958-59 ("If the

ALJ finds that the claimant's testimony as to the severity of her pain and

impairments is unreliable, the ALJ must make a credibility determination … [t]he

ALJ may consider testimony from physicians and third parties concerning the

nature, severity and effect of the symptoms of which the claimant complains.");

*Burch*, 400 F.3d at 679 ("[W]here evidence is susceptible to more than one rational

interpretation, it is the [Commissioner's] conclusion that must be upheld."). The

lack of corroboration of Plaintiff's claimed limitations by the medical evidence,

was a clear and convincing reason, supported by substantial evidence, for the ALJ

to discount Plaintiff's symptom claims.

Second, the ALJ noted that Plaintiff "endorses longstanding anxiety and

depression, but has reported significant improvement in his symptoms with therapy

and medication." Tr. 25. The effectiveness of medication and treatment is a

relevant factor in determining the severity of a claimant's symptoms. *See Warre v.

Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions

effectively controlled with medication are not disabling for purposes of

determining eligibility for benefits) (internal citations omitted); *see also

Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to

treatment can undermine a claimant's complaints of debilitating pain or other

severe limitations).  In support of this finding, the ALJ cites consistent mental status reports from "medication refill appointments" that note Plaintiff was alert, cooperative, not anxious, and in no acute distress.  Tr. 24, 495, 497, 500, 502, 504, 506, 508, 510, 512.  Moreover, in November 2013 Plaintiff reported he was "doing well on current medications," and experienced only "light depression" and "mild anxiety;" and in the same month a psychiatric evaluation of Plaintiff noted that despite Plaintiff's report of depression and anxiety, "at the time of the latest assessment there were no indications of anxiety, nor was he suicidal or homicidal." Tr. 24 (citing Tr. 553, 588).  The ALJ also specifically found that Plaintiff's "condition appeared to significantly improve with minimal counseling."  Tr. 24. For example, in August 2014, Plaintiff's test scores indicated only mild depression and mild anxiety; in September 2014, Plaintiff started taking Prozac and was feeling "much better" and "is happier;" and in October 2014, Plaintiff reported he was seeing a mental health counselor "on a routine basis" and was doing "very well on his current medications."  Tr. 24 (citing Tr. 617, 619, 637).  Finally, the ALJ cited several treatment notes from Plaintiff's therapy sessions in early 2015 noting that Plaintiff was "relaxed and euthymic;" that when he was engaged in activities he like, his depressive and anxious thoughts didn't bother him as much; that he appeared happy and had just gotten engaged to his girlfriend; and that he

reported his mood was "good" and his thoughts were "not too bad" since a medication change.  Tr. 25, 769, 771, 788, 798, 803.

Plaintiff argues the records of improvement with therapy and medication cited by the ALJ are "cherry-picked among records that otherwise show [Plaintiff] had not experienced any major improvement during the cited period."  ECF No. 12 at 13.  In support of this argument, Plaintiff cites reports from Plaintiff's therapist that he may have been underreporting his symptoms because they were inconsistent with the results of the PHQ (measuring depression) and GAD (measuring anxiety) tests, and was not making progress on his stated goals.  ECF No. 12 at 12 at 14-15 (citing Tr. 644, 647, 649, 659, 665, 780).  However, despite the therapist's indications that Plaintiff's reported symptoms weren't accurately reflected in the largely mild results of the PHQ and GAD tests, the cited records also included the same therapist's observations that Plaintiff had relaxed, euthymic, or calm affect; had less intrusive thoughts; and was making progress on his treatment goals.  Tr. 647, 667, 757, 759, 769, 771, 788, 798, 803.  Moreover, as noted above, the overall treatment record consistently indicated that Plaintiff experienced improvement in his symptoms with effective medication management.  Thus, regardless of evidence that could be considered more favorable to Plaintiff, the ALJ reasonably relied on evidence of improvement in Plaintiff's symptoms with therapy and medication to ultimately conclude that the records "do not

document the degree of impairment that [Plaintiff] is now attempting to allege."

Tr. 25; *see Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one

interpretation, the ALJ's conclusion must be upheld); *see also Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995) ("[t]he ALJ is responsible for determining

credibility"). This was a clear and convincing reason to discredit Plaintiff's

symptom claims.

Finally, the ALJ found Plaintiff's problems "appear to be, at least in part,

due to situational problems, and not due to his impairments."[1] Tr. 25. In support

---

[1] As part of this reasoning, the ALJ noted that Plaintiff "has a fairly significant

criminal history to include arrests for multiple DUIs, assault, disorderly conduct,

and criminal mischief. It is likely that [Plaintiff's] criminal history is a situational

factor that makes it more difficult for him to find employment." Tr. 25 (citing Tr.

475). The ALJ may discredit a claimant's allegations based on relevant character

evidence including criminal history. *See Bunnell,* 947 F.2d at 346; *Albidrez v.*

*Astrue,* 504 F.Supp.2d 814, 822 (C.D.Cal.2007) (convictions for crimes of moral

turpitude are proper basis for adverse credibility determination). However, as

noted by Plaintiff, the ALJ appears to cite Plaintiff's remote criminal history as

impeding his ability to find employment, rather than a specific reason to discount

Plaintiff's symptom claims. ECF No. 12 at 7-8. Thus, the relevance of his

of this finding, the ALJ noted, without citation to the record, that Plaintiff "regularly complains of problems with his girlfriend and lack of finances." Tr. 25. Plaintiff argues this reasoning is vague and unsupported by the overall record. ECF No. 12 at 9-10. Specifically, Plaintiff notes that his "relational difficulties were not a topic of his treatment until February 2015 when he began couples counseling;" and, contends that in prior treatment records from the relevant adjudicatory period, "there is no discussion of any ongoing 'situational' problems, and it is certain that these were not the focus of his treatment."[2] ECF No. 12 at 9

---

criminal history in this context of evaluating Plaintiff's symptom claims is unclear, and does not qualify as a specific, clear and convincing reason to discount Plaintiff's subjective testimony. However, any error is harmless because, as discussed herein, the ALJ's ultimate rejection of Plaintiff's symptom claims is supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

[2] As part of his argument as to the ALJ's credibility finding, Plaintiff generally contends, without citation to legal authority, that the ALJ erred in failing to find bipolar disorder was a severe impairment at step two. ECF No. 12 at 11, 15. However, the only evidence cited in support of this argument was ongoing diagnoses of bipolar disorder throughout the treatment record. ECF No. 12 at 11. As noted by Defendant, the ALJ resolved step two in Plaintiff's favor, finding

(citing Tr. 497); Tr. 631, 642, 649, 662, 667).  Although the Court agrees with the

ALJ that the record reflects some exacerbation of Plaintiff's mental health

symptoms in response to situational stress during at least a portion of the relevant

adjudicatory period, it is not a clear and convincing reason, supported by

substantial evidence, to discount Plaintiff's symptom claims.  However, any error

is harmless because, as discussed herein, the ALJ offered additional reasons,

supported by substantial evidence, to discount Plaintiff's symptom claims.  *See*

*Carmickle*, 533 F.3d at 1162-63.

The Court concludes that the ALJ provided clear and convincing reasons,

supported by substantial evidence, for rejecting Plaintiff's symptom claims.

---

Plaintiff has the severe impairment of anxiety with panic, and depression.  Tr. 19.

Moreover, even assuming, *arguendo*, that the ALJ erred in not finding bipolar

disorder as a severe impairment at step two, any error is harmless because Plaintiff

fails to identify how this alleged impairment would result in limitations beyond

those included in the assessed RFC.  *See Lewis v. Astrue,* 498 F.3d 909, 911 (9th

Cir. 2007) (holding that ALJ's failure to list plaintiff's bursitis as a severe

impairment at step two was harmless where ALJ considered limitations caused by

the condition at step four); *see also Molina*, 674 F.3d at 1115 (error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination).

## B. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir.2001)(citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester,* 81 F.3d at 830–831). Plaintiff argues the ALJ erroneously considered the opinion of examining psychologist Holly Petaja, Ph.D. ECF No. 12 at 16-19.

In May 2013, Dr. Petaja examined Plaintiff and completed a psychological evaluation. Tr. 475-82. Dr. Petaja opined that Plaintiff had moderate limitations in nine categories of "basic work activities;" and marked limitations in his ability to

(1) communicate and perform effectively in a work setting; and (2) complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 477. The ALJ granted Dr. Petaja's opinion little weight. Tr. 26. Because Dr. Petaja's opinion was contradicted by Dr. Matthew Comrie, Tr. 126-28, and, Dr. Diane Fligstein, Tr. 103-05, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Petaja's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ noted that Dr. Petaja "did not review any medical records prior to rendering her opinion," and "provides no explanation for the limitations she opines." Tr. 26. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *see also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may permissibly reject check box reports that do not contain any explanation of the bases for their conclusions). Plaintiff cites Dr. Petaja's "description" of his symptoms in the evaluation, and argues those notes are consistent with the marked limitations opined by Dr. Petaja. ECF No. 12 at 18 (citing Tr. 476, 41-82). However, the evidence cited by Plaintiff to support this argument is almost entirely comprised of Plaintiff's own reports; which, standing alone, do not contain the requisite explanation for the severity of the limitations opined by Dr. Petaja. *See*

*Tommasetti*, 533 F.3d at 1041 (an ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted as incredible). Moreover, the limitations assessed by Dr. Petaja are presented in check box form without further explanation; and, as a one-time examining provider, Dr. Petaja did not have an ongoing relationship with Plaintiff in order to lend support to her check box opinion. *Cf. Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) (finding treating physician's check-box opinion was "based on significant experience with [Plaintiff] and supported by numerous records, and [was] therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit."). Accordingly, this was a specific and legitimate reason to grant Dr. Petaja's opinion less weight.

Second, the ALJ found that Dr. Petaja's opinion is "inconsistent with her largely unremarkable mental status evaluation showing no impairment other than some mild memory and concentration problems." Tr. 26; Tr. 478-79. A "discrepancy" between a treating provider's clinical notes and that provider's medical opinion is an appropriate reason for the ALJ to not rely on that opinion regarding the claimant's limitations. *See Bayliss*, 427 F.3d at 1216. Plaintiff argues this finding is unsupported by the record because Dr. Petaja noted Plaintiff's affect was restricted; and Plaintiff scored in the severe range on the BDI and the mild range on the BAI, both tests based on Plaintiff's self-report. ECF No.

12 at 17-18.  Plaintiff also noted that Dr. Petaja did not characterize the mental status examination results as "unremarkable;" and thus, the ALJ incorrectly interpreted the evidence.[3]  *Id.*  However, as noted by Defendant, Dr. Petaja specifically found that Plaintiff's thought process, thought content, orientation, perception, fund of knowledge, abstract thought, insight, and judgment were "within normal limits."  Dr. 24, 478-79.  Dr. Petaja also observed that Plaintiff was

---

[3] Plaintiff notes the ALJ "specifically rejects the reviewing opinions of Dr. Carstens, who explicitly found that Dr. Petaja's opinion was consistent with the clinical observations from [her] examinations, which is contrary to the ALJ's lay opinion that these findings were not consistent with [her] evaluation's clinical findings."  ECF No. 12 at 18 (citing Tr. 615).  However, the Court's review of Dr. Carstens opinion indicates that while Dr. Carstens noted Plaintiff's reported impairments were consistent with Dr. Petaja's clinical observations; Dr. Carstens did *not* specifically find that the functional limitations assigned by Dr. Petaja were supported by her clinical notes.  Tr. 615.  Moreover, as noted by Defendant, the ALJ assigned little weight to Dr. Carsten's and Dr. Eisenhauer's reviews of Dr. Petaja's opinion; however, the Court declines to address this issue because it was not raised with specificity in Plaintiff's opening brief.  *See Carmickle*, 533 F.3d at 1161 n.2.

polite and cooperative, had good eye contact, his mood was congruent, and his speech was of a normal rate, rhythm and volume. Tr. 24, 478. Based on the foregoing, and regardless of evidence that could be interpreted as favorable to the Plaintiff, the evidence is susceptible to more than one rational conclusion, and therefore the ALJ's conclusion must be upheld. *See Burch*, 400 F.3d at 679. The inconsistency between the severity of the limitations opined by Dr. Petaja, and the "largely unremarkable" mental status evaluation she performed, was a specific and legitimate reason to grant her opinion little weight.

Third, and finally, the ALJ found Dr. Petaja's opinion "is also inconsistent with [Plaintiff's] own daily activities to include trying to get into school and looking for jobs online, suggesting he believes he is capable of some work." Tr. 26. An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). However, as noted by Plaintiff, the record indicates that Plaintiff dropped out of online school soon after enrolling because it was "overwhelming," and the record does not indicate that Plaintiff performed any work during the relevant adjudicatory period. ECF No. 12 at 19 (citing Tr. 662). The Court finds the ALJ failed to state with requisite specificity how Plaintiff's desire to work or go to school is inconsistent with the limitations opined by Dr. Petaja. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[w]hen

explaining his [or her] reasons for rejecting medical opinion evidence, the ALJ must do more than state a conclusion, rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct."). Thus, this is not a specific and legitimate reason to reject Dr. Petaja's opinion. However, the error is harmless because the ALJ's ultimate rejection of Dr. Petaja's opinion is adequately supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

**C. Lay Witness**

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his] condition."). To discount evidence from lay witnesses, an ALJ must give reasons "germane" to each witness. *Dodrill*, 12 F.3d at 919. Here, Plaintiff's wife, Ms. Oliphant, offered testimony at the hearing regarding Plaintiff's impairments. Tr. 80-83. However, the ALJ failed to give any reasons, germane or otherwise, for rejecting Ms. Oliphant's opinion. This was error. *See Molina*, 674 F.3d at 1114 ("competent lay witness testimony '*cannot* be disregarded without comment'") (citing *Nguyen*, 100 F.3d at 1467) (emphasis in original)). However, the Ninth

Circuit has held that an ALJ's failure to properly weigh the statements of a lay witness can be held harmless when the witness's testimony was substantially the same as the claimant's and the ALJ provided legally sufficient reasons for finding the claimant less than fully credible. *See Molina*, 674 F.3d at 1121-22. Plaintiff argues the error was not harmless because Ms. Oliphant testified that Plaintiff had to leave the workplace due to anxiety in the past, he does not go out regularly, and he has very few "good days;" and "[t]his testimony supports a finding of disability." ECF No. 12 at 20 (citing Tr. 80-82). The Court disagrees. As argued by Defendant, Ms. Oliphant's testimony "essentially echoed Plaintiff's own allegations, which the ALJ reasonably discounted. For example, similar to Plaintiff's testimony, his wife reported that Plaintiff had anxiety, had social interaction problems, would shut down, and would get irritated." ECF No. 13 at 12 (citing Tr. 59-63, 80-83); Tr. 67-69. Moreover, Plaintiff fails to articulate any additional limitations specifically identified by Ms. Oliphant that the ALJ should have adopted. Accordingly, the Court finds any error considering Mrs. Oliphant's opinion was harmless because her testimony did not describe any limitations not already described by Plaintiff; thus, the ALJ's well-supported reasons for rejecting Plaintiff's testimony apply equally as well to Ms. Oliphant's testimony. *See Molina*, 674 F.3d at 1117; *see also Stout*, 454 F.3d at 1055 (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

# CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom testimony; properly weighed the medical opinion evidence; and did not commit harmful error in considering the lay witness testimony. After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 13, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** September 20, 2018.

*s/Fred Van Sickle*
Fred Van Sickle
Senior United States District Judge